IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREW B. LEE,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 6:15-cv-00951-PA

OPINION AND ORDER

PANNER, Judge:

    Plaintiff Andrew Lee brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying his application for Title II

Disability Insurance Benefits under the Social Security Act. For the reasons set forth below, the

Commissioner's decision is reversed and this case is remanded for further proceedings.

1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

On February 23, 2012, plaintiff applied for Disability Insurance Benefits, alleging an onset date of January 6, 2010. Tr. 91-94. His application was initially granted in part, in that he was found disabled as of March 19, 2012. Tr. 45-50. Upon reconsideration, he was found disabled as of February 16, 2012. Tr. 55-59. On August 21, 2014, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert. Tr. 233-69. On October 7, 2014, the ALJ issued a partially favorable decision, again finding plaintiff disabled as of February 16, 2012. Tr. 13-21. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 5-7.

## STATEMENT OF FACTS

Born on August 10, 1955, plaintiff was 54 years old on the alleged onset date of disability and 59 years old at the time of the hearing. Tr. 91. Plaintiff left school after the tenth grade. Tr. 238. He worked previously as an automobile salesman. Tr. 116.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

2 – OPINION AND ORDER

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir, 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a medically determinable, severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, he is not disabled; if he

3 – OPINION AND ORDER

cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 15. At step two, the ALJ determined that, as of January 6, 2010, plaintiff's degenerative disc disease, spondylosis of the lumbar spine, and right ulnar neuropathy were severe; by February 16, 2012, plaintiff also suffered from the severe impairment of right carpal tunnel syndrome. *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 16.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that, as of January 6, 2010, plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work as follows:

> lifting, carrying, pushing and pulling 20 pounds occasionally and 10 pounds frequently, standing and walking about six hours in an eight-hour workday and sitting for about six hours in an eight-hour workday. He could frequently climb ramps and stairs, stoop, kneel, crouch, and crawl, and occasionally climb ladders, ropes, and scaffolds. [He] could frequently handle and finger with the right upper extremity.

Tr. 16-17. By February 16, 2012, plaintiff's ability to stand and walk had eroded; his RFC remained the same except that standing and/or walking was limited to two hours in an eight-hour workday. Tr. 19.

4 – OPINION AND ORDER

At step four, the ALJ determined that, between January 6, 2010, and February 15, 2012, plaintiff could perform his past relevant work. *Id.* However, beginning on February 16, 2012, the ALJ found that plaintiff was disabled under the Medical-Vocational Guidelines. Tr. 20-21.

## DISCUSSION

This case hinges on whether there is sufficient evidence in the record to establish an earlier disability onset date. Specifically, plaintiff argues that the ALJ erred by: (1) discrediting his hearing testimony regarding the extent of his symptoms on or around January 6, 2010; (2) rejecting the lay witness testimony; and (3) failing to develop the record in regard to his onset date pursuant to SSR 83-20.

## I.     Plaintiff's Testimony

Plaintiff asserts that the ALJ wrongfully discredited his subjective symptom statements concerning the severity of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial

5 – OPINION AND ORDER

evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that be became unable to work on January 6, 2010, due to lower back pain and right arm pain. Tr. 241. He explained that, at first, "some days were better than others," but his symptoms ultimately deteriorated to the point that he "hurt all the time." Tr. 241-42. As a result, plaintiff "couldn't do the standing [and] the running around," or the writing, required by his past work as an automobile salesman. Tr. 243-44. Plaintiff remarked that, at the time he was ready to seek medical treatment, he lost his job and, by extension, his insurance. Tr. 251-52. He applied for the Oregon Health Plan and re-initiated treatment in February 2012 because "it just got to the point [where he] couldn't stand [the pain] anymore." Tr. 252.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms in January 2010, but his "statements concerning the intensity, persistent and limiting effects of these symptoms are not entirely credible."[1] Tr. 17. Specifically, in regard to his back, the ALJ determined that plaintiff did not report an increase in pain until well after the alleged onset date and did not seek any treatment related thereto until 2012. Tr. 18. Similarly, the ALJ found that

---

[1] The Court notes that, pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-39, *available at* 2016 WL 1119029 (superseding SSR 96-7p). The ALJ's October 2014 decision was issued more than one year before SSR 16-3p became effective and there is no binding precedent interpreting this new ruling or whether it applies retroactively. *Compare Ashlock v. Colvin*, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), *with Lockwood v. Colvin*, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings in regard to this issue pass muster irrespective of which standard governs, the Court need not resolve this issue.

plaintiff did not seek any medical care for his allegedly disabling right arm pain during the

relevant period. *Id.* The ALJ also noted that plaintiff "presented to his primary care provider

Richard Evans, M.D., in October 2009, just a few months before the alleged onset date, with

complaints that his right fourth and fifth digits sometimes went numb [but] did not follow

through with Dr. Evans' recommendation [to obtain electro diagnostic testing] until 2012." *Id.*

An ALJ may discredit a claimant due to an "unexplained or inadequately explained

failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674

F.3d 1104, 1113 (9th Cir. 2012) (citations and internal quotations omitted). Nevertheless, before

drawing a negative inference, the ALJ must consider "any explanations that the individual may

provide, or other information in the case record, that may explain infrequent or irregular medical

visits." SSR 96-7p, *available at* 1996 WL 374186; SSR 16-39, *available at* 2016 WL 1119029.

The record before the Court supports the ALJ's conclusion that plaintiff's symptoms did

not exist at a disabling level as of January 6, 2010. Indeed, plaintiff did not seek any medical

care for more than two years after the alleged onset date. Although plaintiff cites to a lack of

finances, his hearing testimony demonstrates that he was able to obtain insurance through the

Oregon Health Plan and medical care once he wanted or believed he needed it. [2] Further, chart

---

[2] Plaintiff posits that his lapse in treatment stemmed from "ha[ving] to wait until he qualified for
[the Oregon Health Plan]." Pl.'s Opening Br. 11; *but see* Tr. 241-42, 251-52 (plaintiff suggesting
that his delay in seeking treatment was intentional, in that his symptoms were variable at first
and he was hopeful they would improve). Plaintiff, however, failed to provide any specifics
about the application process. Without more, it was reasonable for the ALJ to conclude that
plaintiff's symptoms were not as severe as alleged in January 2010, even accepting that plaintiff
was not immediately qualified for the Oregon Health Plan. Nevertheless, as discussed in greater
detail below, there is evidence that plaintiff's back pain worsened prior to February 16, 2012. In
other words, the fact that plaintiff's conditions may not have been disabling as of the alleged
onset date does not necessarily mean that the ALJ's established disability date is accurate.

notes generated immediately prior to the adjudication period do not contain any reports of back or right arm pain. Tr. 160, 209-12, 223-24; *see also Coaty v. Colvin*, 2015 WL 1137189, \*4 (D. Or. Mar. 11, 2015) ("contemporaneous self-reports to medical providers, as memorialized by their treatment notes, are the most accurate portrayal of functioning" where the period at issue is remote). While, on one occasion in October 2009, plaintiff described right hand numbness, he did not follow up on his doctor's referral to nerve conduction testing until 2012, despite the fact that he had more than two months to pursue this testing before losing his insurance. Tr. 211-12; *see also* Tr. 209-10 (plaintiff not mentioning any back or arm pain or numbness during a December 2009 appointment with Dr. Evans). Finally, although not dispositive, the Court notes plaintiff testified that he would have continued working, albeit "not [for] long," had he not been fired. Tr. 251-52.

The only other evidence related to plaintiff's functioning was generated on or after the established disability date. Significantly, this evidence – including plaintiff's self-reports regarding his retrospective symptoms – does not reflect that his conditions existed at a disabling level on or around January 6, 2010. Tr. 130-45, 161-79, 187-208, 213-22, 229-32. In sum, the ALJ furnished a clear and convincing reason, supported by substantial evidence, for rejecting plaintiff's subjective symptoms statements. The ALJ's decision is affirmed as to this issue.

**III. Lay Testimony**

Plaintiff next argues that the ALJ neglected to provide a germane reason to reject the testimony of his adult son, Trevor Lee. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into

8 – OPINION AND ORDER

account. *Molina*, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. *Id.* (citation and internal quotation omitted).

In July 2012, Mr. Lee completed a Third-Party Adult Function Report. Tr. 138-45. His statements generally reveal that plaintiff experiences "constant pain," which renders him "unable to lift/walk/stand/bend/sit upright for any length of time." *Id.*

The ALJ found Mr. Lee's third-party statements "of little value in assessing functioning as of the alleged onset date" because they were provided "in July 2012 [and thus represent] functioning during the period [plaintiff] has been determined disabled." Tr. 17. Evidence generated outside the dispositive period is generally of limited relevance. *See Morgan v. Colvin*, 2013 WL 6074119, \*10 (D. Or. Nov. 13, 2013) (ALJ can disregard evidence that post-dates the date last insured if it is not retrospective); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (ALJ need not accept medical reports that predate the onset of disability).

Contrary to plaintiff's assertion, an independent review of the record reveals that Mr. Lee's testimony concerning plaintiff's functional limitations was generated after February 16, 2012. Moreover, there is no indication that Mr. Lee's testimony was intended to relate to anything other than plaintiff's then-current functioning. The ALJ's evaluation of the lay witness testimony is upheld.

**III.    Duty to Develop the Record**

Lastly, plaintiff contends that the ALJ should have developed the record by consulting a medical expert because it was unclear when his impairments became disabling. The claimant bears the burden of proving the existence or extent of an impairment, such that the ALJ's limited

9 – OPINION AND ORDER

"duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted). In particular, "where a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date" pursuant to SSR 83-20.[3] *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998).

  The record demonstrates that plaintiff's symptoms increased in severity prior to February 16, 2012. For instance, in February 2012, plaintiff re-initiated care with Dr. Evans for treatment of his "more chronic" lower back pain. Tr. 204-08. Plaintiff presented to Dr. Evans four times in May 2012 complaining of back pain. Tr. 193-203. At the end of that month, Dr. Evans observed that plaintiff's back pain was "markedly" worse than a year ago – making his "functional abilit[ies] really restricted" – and referred him to a specialist. Tr. 193. In July 2012, plaintiff reported to Todd Lewis, M.D., the spine specialist, that his pain has been constant and unresponsive to treatment for nine to ten months. Tr. 176. Based on his examination and a review of plaintiff's imaging studies, Dr. Lewis opined that back surgery was "medically necessary." Tr. 177-79. That same month, plaintiff completed an Adult Function Report, which evinces that his impairments worsened sometime in 2011. *See, e.g.*, Tr. 135.

  At the hearing, the ALJ acknowledged that plaintiff's symptoms were gradually deteriorating and may have become more extreme prior to the established disability date. Tr.

---

[3] The Commissioner attempts to cast SSR 83-20 as applying exclusively to mental impairments diagnosed after the date last insured. Def.'s Resp. Br. 11-15. However, neither the ruling nor the case law interpreting it can be read so narrowly. *See* SSR 83-20, *available at* 1983 WL 31249 (purpose is generally to "describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XVI of the Social Security Act").

256, 259; *see also Daley v. Colvin*, 2014 WL 5473797, *9 (D. Or. Oct. 28, 2014) (degenerative disc disease is a condition that, "by definition, progressively worsens over time"). In addition, in his written decision, the ALJ expressly recognized that the state agency consulting sources found the record to be "insufficient" regarding plaintiff's functioning prior to February 16, 2012. Tr. 18-19, 26, 39.

Under these circumstances, the ALJ committed harmful legal error by failing to follow SSR 83-20. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless). Therefore, further proceedings are necessary to resolve this case. *See Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (articulating the standard for determining the remedy where the ALJ committed harmful legal error). Upon remand, the ALJ must consult a medical expert to determine the precise onset date of plaintiff's disability and, if necessary, reformulate plaintiff's RFC and obtain additional VE testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED consistent with this opinion.

IT IS SO ORDERED.

DATED this ___7___ day of July 2016.


_____
Owen M. Panner
United States District Judge


11 – OPINION AND ORDER